NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2014[*]
Decided November 5, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-1731

| | |
|---|---|
| TROY HENDERSON, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 13 cv 2621 |
| JASON MARKER and | |
| LTD COMMODITIES, LLC, | Robert M. Dow, Jr., |
|     *Defendants-Appellees.* | *Judge.* |

### O R D E R

Troy Henderson appeals from the dismissal of his lawsuit against former employer LTD Commodities and a lawyer who filed a workers' compensation claim on his behalf. This is the latest of Henderson's legal battles relating to his employment with

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

LTD. He previously accepted money to settle an accusation of racial discrimination and a claim for workers' compensation. He also lost a lawsuit against LTD and lawyers who represented both him and the company in settling his allegation of discrimination. The district court dismissed this action for a variety of reasons, including failure to state a claim for relief under federal law. We uphold the dismissal.

For purposes of this appeal, we accept as true the facts alleged in Henderson's complaint and incorporated exhibits. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014); *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Henderson began working as a maintenance mechanic for LTD in 2007. His coworkers made racial slurs and assigned him the more-dangerous tasks because he was the only African American on the maintenance team. One such task was repairing a conveyor belt while it still was operating, leading to a knee injury and temporary disability for which he collected workers' compensation benefits beginning in 2008. Henderson reported the discrimination to LTD's personnel department and then retained a lawyer. In 2009, the parties executed an $83,000 settlement that ended Henderson's employment with LTD but stipulated that he would waive all future claims against the company except as relating to his unresolved demand for additional workers' compensation. The total payment to Henderson included $40,000 for emotional harm and other injuries unrelated to lost wages. LTD recorded this amount on an IRS Form 1099 as "nonemployee compensation." Henderson wrote to the IRS, asking if it was correct to classify the $40,000 as "nonemployee compensation." He suspected that, by recording the amount this way, LTD had represented to the IRS that he was a contract worker instead of an employee, thus undermining his claim for workers' compensation.

Then in 2011 Henderson filed the first of his lawsuits against LTD, raising a number of federal and state claims but principally seeking to nullify the 2009 settlement. Also named as defendants were the lawyers who represented him and LTD in the settlement negotiations. The district court dismissed all of Henderson's federal claims sua sponte for failure to state a claim and declined to exercise supplemental jurisdiction over his state-law claims. *See Henderson v. Rauen*, No. 11–cv–5787 (N.D. Ill. Sept. 28, 2011). Henderson did not appeal the dismissal.

Meanwhile, attorney Jason Marker negotiated on Henderson's behalf to resolve the workers' compensation claim, which remained before the Illinois Workers' Compensation Commission. Marker and counsel for LTD agreed on $140,000 in addition to the workers' compensation benefits Henderson already had received, but the company, having just been sued by Henderson, apparently wanted from him a new

release of all other, unrelated claims. Marker thus presented Henderson with proposed settlements that would give him $140,000 for his workers' compensation claim plus a nominal $1 payment for a general release of any other claims against LTD. Henderson balked because he suspected that Marker and LTD were trying to trick him into waiving his workers' compensation claim as part of the general release, even though that claim was explicitly excluded from the general release. Henderson twice signed and then revoked the general release, which prompted Marker to threaten to withdraw. The appellate record does not disclose what became of the workers' compensation claim or the general release, but a search of the website of the Illinois Workers' Compensation Commission confirmed that the parties settled the workers' compensation claim for $140,000 in December 2011.

In 2013 the IRS responded to Henderson's concern that LTD had mischaracterized the $40,000 from the initial settlement as "nonemployee compensation." The IRS wrote that LTD should have classified the amount as "other income" on the Form 1099. LTD issued a corrected Form 1099, but a lawyer hired by Henderson (whose opinion is attached as an exhibit to one of his submissions) advised that the difference in characterization had no tax significance.

Henderson then filed this action against LTD and Marker, asserting multiple federal and state-law claims. He accused LTD and Marker of violating 42 U.S.C. § 1985(3) by conspiring to trick him into releasing his workers' compensation claim for $1, to deprive him of "statutorily protected proceedings," and to interfere with his workers' compensation rights. He also claimed that, because of his race, the defendants had interfered with his contract rights in violation of 42 U.S.C. § 1981 by misclassifying his work status with the IRS and by retaliating against him for filing his first lawsuit. Henderson also asserted a series of state-law claims, including negligent supervision against LTD and breach of fiduciary duty against Marker. On the defendants' motions, the district court dismissed the federal claims based on claim preclusion and failure to state a claim. The court declined to exercise supplemental jurisdiction over the state-law claims.

On appeal Henderson makes several arguments, but we need not elaborate on them because we conclude that, affirmative defenses aside, his lengthy complaint states no federal claim. Indeed, as the district court noted, many of Henderson's principal allegations are contradicted by his attachments. A claim arising under either § 1985(3) or § 1981 would require proof that LTD and Marker acted *because* of Henderson's race. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (explaining that § 1981

offers relief when racial discrimination interferes with contract rights); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (noting that § 1985(3) requires proof of racial or other class-based animus); *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (discussing § 1981); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 (7th Cir. 2000) (discussing § 1985). In his complaint Henderson accuses LTD and Marker of acting because of his race, but his 30-page complaint and almost 90 pages of attachments come nowhere close to plausibly alleging discriminatory animus by LTD or Marker. Similarly, Henderson claims retaliation under § 1981, but this conclusory allegation is refuted by attachments showing that he suffered no ill effects from LTD's actions. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that § 1981 encompasses retaliation); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (explaining that adverse action is an element of retaliation claim under § 1981).

Simply reciting legal terms will not suffice to state a federal claim, so the district court properly dismissed Henderson's § 1985 and § 1981 claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009)*; Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007); *Adams*, 742 F.3d at 728, 733. And Henderson does not contest the district court's choice to decline to exercise supplemental jurisdiction over his state-law claims, so those claims are abandoned. *See Powers v. Richards*, 549 F.3d 505, 512–13 (7th Cir. 2008); *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 555 (7th Cir. 2004).

We have reviewed Henderson's remaining contentions, and none has merit.

AFFIRMED.